UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERESA GIBSON,

               Plaintiff,

v.

MGM GRAND DETROIT, LLC,

               Defendant.

_____/

Case No. 17-12127

Paul D. Borman
United States District Judge

Stephanie Dawkins Davis
United States Magistrate Judge

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 13)

This is a gender discrimination lawsuit under Title VII and the Elliott-Larsen Civil Rights Act. Plaintiff Teresa Gibson has worked as an engineer and a plumber for Defendant MGM Grand Detroit, LLC ("**MGM**") since 1999. She alleges in this action that MGM discriminated against her with respect to the terms of her employment because she is female. Three specific staffing decisions are at issue in this case: MGM's denial of Plaintiff's application for a lateral transfer from her position in the casino to a position in the hotel in 2015, and its denial of two applications for promotion to more senior jobs that Plaintiff submitted in early 2016.

## I.      BACKGROUND

### A.    Factual Background

#### 1.    Labor Agreement and Relevant Positions at MGM

The parties do not dispute that a collective bargaining agreement was in effect

at all pertinent times: specifically, a Labor Agreement between MGM Grand Detroit and the Detroit Casino Council. (ECF No. 13, Def.'s Mot. Ex. A, Labor Agreement.) The job classifications at issue in this case are contained in a section of the Labor Agreement entitled "Side Letter #1: Facilities Department Maintenance Trainees and Engineers." (Labor Agreement at 107, Pg ID 120.) That section describes two broad occupational categories: Maintenance Trainees and Engineers. (*See id.* at 107-11, Pg ID 120-24.) The prerequisite for a Maintenance Trainee is "a High School diploma or GED, and mechanical aptitude," and Maintenance Trainees range in rank from Level I to Level IV. (*Id.* at 107-08, Pg ID 120-21.)

The prerequisite for all Engineers is "a minimum of two (2) years' experience in building maintenance in the hospitality or service industry or two (2) years building maintenance skills that are transferable to the hospitality or service industry." (*Id.* at 108, Pg ID 120.) The Labor Agreement identifies three classifications of Engineers: Engineer I, Engineer II, and Engineer III – Journeyman. The Engineer I classification lists only "[t]rade related certification or license where mandated by trade regulatory requirements" as a prerequisite in addition to the two years of experience required for all Engineer positions. (*Id.*) Engineer II and Engineer III have more elaborate qualification requirements, and both Engineer II and Engineer III are broken into four specialty subcategories: "Engineer," "Carpenter," "Painter," and "Pit Technician." (*Id.* at 109-111.)

2

Article 7.05 of the Labor Agreement relevantly provides as follows:

a. When a vacancy exists after the provisions of this Agreement for transfers within classification have been fulfilled, the vacancy shall be posted as a promotional opportunity. Bargaining unit Employees shall be awarded promotional opportunities for which they are qualified before new Employees are hired. The qualifications required for a position will be determined by the Employer; such determination shall not be arbitrary or capricious.

b. When more than one bargaining unit Employee desires a particular promotional opportunity, the Employer will consider the Employee's house seniority, qualifications to perform the work, and employment record for the previous six (6) months. When qualifications to perform the work are equal, the senior Employee shall be the one promoted.

c. A "promotional opportunity" shall be deemed to be a transfer to another classification in which the transferred Employee has an opportunity for increased income or for subsequent job progression.

(*Id.* at 14, Pg ID 119.)

## 2. Plaintiff's Work History at MGM

Plaintiff began working for MGM in 1999 as a Maintenance Trainee at the MGM Grand Detroit casino resort hotel, and was promoted to Engineer I in 2002. (ECF No. 22, Deposition of Teresa Gibson at 16:10-11, 17:2-7.) In or around 2002 and 2003, Plaintiff successfully completed adult-education courses in plumbing at Detroit Public Schools' A. Philip Randolph Career and Technical Center, and received tuition reimbursement from MGM for those courses. (Def.'s Mot. Ex. C, Plumbing Course Certificates; Gibson Dep. 16:18-19, 17:25-19:1.) Plaintiff testified that the certification that she received from these courses was necessary for her to

3

advance from Maintenance Trainee to Engineer I. (Gibson Dep. 16:18-17:1.) Plaintiff further testified that she has not undertaken any other continuing professional education programs since then. (Gibson Dep. 18:24-19:1, 19:18-21.)

Plaintiff's responsibilities as an Engineer I during the relevant time period were to repair plumbing issues that arose in the women's restrooms, the "back of house" restrooms, and the kitchens, all of which were located in the casino. (Gibson Dep. 19:25-20:14.) Plaintiff testified that although her Engineer I position did not include electrical or carpentry work, she did at different times do some work within those areas, in that she "replaced . . . receptacles, sockets and things" and changed lightbulbs, and also "worked in the carpentry shop." (Gibson Dep. 20:17-25.) Ernest Lewis, one of Plaintiff's supervisors, testified that on one or more occasions, he offered Plaintiff, who was normally assigned to the casino, the opportunity to shadow engineers who were assigned to the hotel, but that Plaintiff did not avail herself of the opportunity at any time. (ECF No. 26, Deposition of Ernest Lewis at 31:8-32:3.)

The parties agree that the promotion decisions at issue in this case were made by two specific managers in the engineering department: Lewis and Jimmie Valentine. (*See* Def.'s Mot. at 7, Pg ID 95; ECF No. 19, Pl.'s Resp. at 2, Pg ID 227.) Lewis testified that he has not promoted any female employees since he became a manager in or around 2011, but he also testified that Plaintiff was the only female

candidate for internal promotion that he was tasked with interviewing during that time, and that both of the external female job applicants he interviewed during that time were extended offers. (Lewis Dep. at 11:14-12:3, 29:7-19.) Valentine testified that while decisions to promote female employees during his tenure have been made by the collective bargaining committee and the human resources department, he could only recall being personally involved in the decision to promote one female employee. (ECF No. 23, Deposition of Jimmie Valentine at 43:23-47:2.)

In 2015, Plaintiff applied to a lateral Engineer I position on the "FACE team,[1]" a job that would have transferred her from working in the casino to working exclusively in the hotel. Plaintiff's application was not successful, and Maintenance Trainee Marcus Weldon was hired instead. (Pl.'s Resp. Ex. F, Weldon Job History; ECF No. 20, Def.'s Reply Ex. C, Deposition of Marcus Weldon at 8:24-25.)

Plaintiff applied for two other positions in early 2016—an "Engineer II – FACE Team" position, and an "Engineer III – Plumber" position—and she interviewed for both jobs on March 2, 2016. Following the interview, both Valentine and Lewis filled out an "Interview Rating Sheet" as an evaluation of Plaintiff's candidacy for the two positions. (Def.'s Mot. Ex. K, Gibson Interview Materials.)

---

[1] The "FACE team" is comprised of MGM employees who work in the hotel only. (*See* Def.'s Mot. at 1, Pg ID 89; Pl.'s Resp. at 6, Pg ID 231.) "FACE" is an acronym that stands for "Fix And Clean Everything." (*See* Def.'s Mot. at 4, Pg ID 92; Gibson Dep. 49:11-12.)

The Interview Rating Sheet consists of a quantitative rating section in which the evaluator rates the candidate on a scale of 1 to 5 in various categories; a narrative section for "Overall Comments"; and a section where the evaluator checks one of two boxes indicating "Recommended" or "Not Recommended." (*Id.*)

In the quantitative section of Plaintiff's Interview Rating Sheet, on a scale of 1 to 5, Valentine rated Plaintiff at 2 in "Technical Expertise," 3 in "Business Acumen," 3 in "Customer Focus," 3 in "Interpersonal Communication," 3 in "Teamwork," 2 in "Related Education/Training," and "N/A" in "Computer Skills (where applicable)." In the "Overall Comments" section, Valentine wrote: "Dose [*sic*] not have a journeyman license[2] and said she dose [*sic*] not know the hotel – but she should get the job – worked here 17 years." In the final section, Valentine checked the box for "Not Recommended." (*Id.* at Pg ID 173.)

On Lewis's Interview Rating Sheet, Plaintiff received identical scores in the quantitative ratings section as she received on Valentine's Interview Rating Sheet. In the "Overall Comments" section, Lewis wrote:

> Plumber III – Candidate doesn't have a journey man's plumbers [*sic*] license. <Required for position>.

---

[2] MGM's internal job description for the "Engineer III – Journeyman" position included, under the heading "Knowledge, Skills and Abilities," the phrase "Journeyman license required." (Def.'s Mot. Ex. G, E-III Description at Pg ID 155.) The analogous job description for the "Engineer II – FACE Team" position did not have a comparable requirement. (Def.'s Mot. Ex. H, E-II Description at Pg ID 158.)

Plumber II – Candidate has never worked in a hotel and has no experience with Bartech, NXTV, InnCom.[3]

(*Id.* at Pg ID 177.) Like Valentine, Lewis also checked the box indicating "Not Recommended" in the final section. (*Id.*)

Plaintiff was not ultimately hired into either of the two jobs. The "Engineer II – FACE Team" position was given to Weldon. Valentine and Lewis gave Weldon the same quantitative scores in the Interview Rating Sheets they filled out for him: 4 in "Technical Expertise," 4 in "Business Acumen," 5 in "Customer Focus," 5 in "Interpersonal Communication," 4 in "Teamwork," 4 in "Related Education/Training," and "N/A" in "Computer Skills (where applicable)." (Pl.'s Resp. Ex. H, Weldon Interview Materials at Pg ID 290-91.) In the narrative section on his Interview Rating Sheet for Weldon, Valentine wrote: "Will work well in guest service of the hotel & repair service. Has done guest call's [*sic*] and did a good job at it." (*Id.* at Pg ID 291.) On his, Lewis wrote: "Great interview. Candidate is very knowledgeable in hotel service, engineer mechanical skills. Obtained AAS from HFCC while working with the company. Recommended for promotion & Eng. II position." (*Id.* at Pg ID 290.)

The "Engineer III – Journeyman" position was awarded to Joseph Davis, a

---

[3] MGM represents that "[t]he 'Bartech, Inncom and NXTV systems' include the television and guest bar systems in the hotel's guest rooms." (Def.'s Mot. at 7, Pg ID 95.)

new hire. (Valentine Dep. 50:11-51:19; Lewis Dep. 27:4-7.) Lewis rated Davis at 5 in "Technical Expertise," 4 in "Business Acumen," 5 in "Customer Focus," 4 in "Interpersonal Communication," 4 in "Teamwork," 5 in "Related Education/Training," and "N/A" in "Computer Skills (where applicable)." (Pl.'s Resp. Ex. O, Davis Interview Materials at Pg ID 317.) Valentine gave Davis the same scores, except that he gave Davis a 5 in "Business Acumen" instead of a 4, as Lewis had. (*Id.* at Pg ID 318.) In the narrative section on his Interview Rating Sheet for Davis, Valentine wrote: "Would work well with the team." (*Id.*) On his, Lewis wrote: "Great candidate, very knowledgeable." (*Id.* at Pg ID 317.)

## B.    Procedural History

On March 16, 2016, Plaintiff's union filed a grievance regarding MGM's staffing of the "Engineer II – FACE Team" position. The Grievance Report stated that "[t]he employer is in clear and direct violation of the Collective Bargaining Agreement, including but not limited to: Article 7.05 by incorrectly filling a promotional opportunity for an Engineer II position." (Def.'s Mot. Ex. O, Grievance Report.) The Grievance Report then stated: "Remedy Sought: Immediately award the promotion in accordance with the Collective Bargaining Agreement and make affected member whole for lost wages and benefits." (*Id.*) MGM represents in its Motion for Summary Judgment that this grievance "was never pursued by the union and is no longer pending," and also that the union did not file any grievance

regarding the staffing of the "Engineer III – Journeyman" position. (Def.'s Mot. at 12, Pg ID 100.) Plaintiff does not dispute either of these statements in her Response to MGM's Motion, and in fact makes no mention of any grievance in her Response or in the Complaint. Plaintiff testified in her February 2018 deposition that to her knowledge, the grievance was not still pending as of that time, and further testified that her union did not file any separate grievance concerning the Engineer III position. (Gibson Dep. 10:12-14, 75:14-19.)

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("**EEOC**") on March 21, 2016. (Def.'s Reply Ex. B, EEOC Charge.) The narrative statement in Plaintiff's EEOC Charge stated:

> I began my employment with the above-mentioned employer on May 28, 1999. I am currently employed as an Engineer One.
> On February 1, 2016, and again on February 26, 2016, I applied two separate positions. One position for an Engineer Two and the second one Engineer Three. The first position was awarded to a less senior less qualified employee; the second was awarded to an outside employee. I have the most seniority.
> I believe I was denied promotional opportunities due to my gender, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id.* at Pg ID 363.) Plaintiff testified that she did not file any other EEOC Charges. (Gibson Dep. 98:3-21.) The parties have not expressly indicated the result of Plaintiff's March 21, 2016 EEOC Charge.

On May 25, 2017, Plaintiff filed this action in the Wayne County Circuit

Court, and MGM removed it to this Court on June 29, 2017. (ECF No. 1.) Plaintiff's

Complaint sets forth only one count ("Gender/Sex Discrimination"), but identifies

both Title VII and Michigan's Elliott-Larsen Civil Rights Act ("**ELCRA**"), Mich.

Comp. Laws § 37.2101 *et seq.*, as statutory bases for the lawsuit. (ECF No. 1 Ex A.,

Pg ID 10-15 (hereinafter "**Compl.**").) In addition to the factual allegations regarding

the staffing decisions summarized above, the Complaint alleges as follows:

> 13. Plaintiff was denied training while male employees all received 2
> weeks of training.
> 14. Plaintiff applied for the Plumber's Position several times and each
> time was denied the job, even though she worked as the only plumber
> for years in the entire building.
> 15. Plaintiff has been told that because she does not have a plumber's
> license she has to stay a Plumber 1, while Bill Walker, a male who does
> not have a plumber's license is allowed to be a Plumber 3.
> 16. Plaintiffs manager, Jimmy Valentine told Plaintiff that she hasn't
> been to school and doesn't have a certificate, however MGM paid for
> her classes in 2002 so she is a certified plumber.
> 17. On or about 2013 Plaintiff was terminated for allegedly damaging
> a vehicle while other male individuals accused of doing the same thing
> received either a 1 day suspension or no discipline at all.
> 18. When Plaintiff was terminated they hired a brand new employee in
> as Plumber 3.
> 19. After Plaintiff won her arbitration and was awarded her job back,
> instead of giving her the Plumber 3 position [was] given to a male with
> less experience.

(Compl. ¶¶ 13-19.) Plaintiff also alleged in the Complaint that MGM violated its

duties under the applicable statutes by "[r]etaliating against employees who make

complaints of discrimination and harassment," and by "[f]ailing to take serious and

10

corrective action when informed by Plaintiff that the conduct towards her was unlawful." (Compl. ¶¶ 32(b)-(c).)

After the close of discovery, MGM filed the Motion for Summary Judgment that is now before the Court. (ECF No. 13, Def.'s Mot.) Plaintiff filed a timely Response to MGM's Motion (ECF No. 19, Pl.'s Resp.), and MGM filed a timely Reply (ECF No. 20, Def.'s Reply). This Court conducted a hearing on MGM's Motion for Summary Judgment on Wednesday, August 22, 2018, and now issues the following ruling.

## II.    LEGAL STANDARDS

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of a motion for summary judgment where proof of that fact 'would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.'" *Dekarske v. Fed. Exp. Corp.*, 294 F.R.D. 68, 77 (E.D. Mich. 2013) (Borman, J.) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"In deciding a motion for summary judgment, the court must draw all

reasonable inferences in favor of the nonmoving party." *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). At the same time, the non-movant must produce enough evidence to allow a reasonable jury to find in his or her favor by a preponderance of the evidence, *Anderson*, 477 U.S. at 252, and "[t]he 'mere possibility' of a factual dispute does not suffice to create a triable case." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004) (quoting *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Instead, "the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). "The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and citations omitted). That evidence must be capable of presentation in a form that would be admissible at trial. *See Alexander v. CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009).

## III. DISCUSSION

The following legal principles apply both to Plaintiff's Title VII claim and to her ELCRA claim. *See Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 652–53 (6th Cir. 2012) ("[C]ases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases.") (internal quotation marks omitted) (collecting authorities).

Title VII discrimination claims "can be proven by direct or circumstantial evidence." *Id.* at 648–49 (6th Cir. 2012) (citing *DiCarlo v. Potter,* 358 F.3d 408, 414 (6th Cir. 2004)). "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id.* at 649 (internal quotation marks omitted) (quoting *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir. 1999)). "Once there is credible direct evidence, the burden of persuasion shifts to the defendant to show that it would have terminated the plaintiff's employment had it not been motivated by discrimination." *Jacklyn*, 176 F.3d at 926.

"Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Ondricko*, 689 F.3d at 649 (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997)). "When a plaintiff proceeds on her claim using circumstantial evidence, she bears the burden of establishing a

*prima facie* claim of discrimination under the tripartite *McDonnell-Douglas* framework." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 238 (6th Cir. 2005) (citing *DiCarlo*, 358 F.3d at 414 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973))). If a plaintiff makes an adequate showing as to the elements of her *prima facie* case, "the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for the employment decision at issue. If the defendant is able to meet this burden, the plaintiff must establish that the defendant's stated reason is mere pretext for its true discriminatory motives." *Id.* (citing *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 463 (6th Cir. 2003)). The plaintiff can accomplish this "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008) (internal quotation marks omitted) (quoting *Wexler v. White's Fine Furniture*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc)).

In this case, Plaintiff has offered no direct evidence of discriminatory motivation underlying any of MGM's challenged decisions. For her claims to survive summary judgment on the basis of circumstantial evidence, therefore, Plaintiff must first establish that a reasonable jury could find each of the elements of her *prima facie* case to be satisfied. As Plaintiff's claims all concern promotion decisions, Sixth Circuit precedent requires her to demonstrate that a reasonable jury

14

could find for her on each of four elements:

> (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied.

*White*, 429 F.3d at 240 (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000)). There is no dispute in the instant case regarding the first or third prong of this standard: i.e., that Plaintiff is a member of a protected class, or that she was considered for and denied the positions she applied to. The contested issues as regards Plaintiff's claims in this action are whether she was qualified for the position at issue, and whether the position was awarded to an otherwise similarly situated person outside the protected class (i.e., a male employee).

If Plaintiff can make out a *prima facie* case as to any of the challenged personnel actions, and if MGM articulates a legitimate, nondiscriminatory reason for that action, then it falls to Plaintiff to show the existence of a genuine issue of material fact as to whether MGM's stated reason is pretextual.

## A.    Section 301 Preemption

One threshold issue merits discussion at the outset: whether, as MGM claims, the majority of Plaintiff's arguments are necessarily preempted by federal labor law. The principle behind MGM's preemption argument is that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement

made between the parties in a labor contract, that claim must either be treated as a §

301 claim ... or dismissed as pre-empted by federal labor-contract law[.]" *CNH Am.*

*LLC v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*

*(UAW)*, 645 F.3d 785, 798 (6th Cir. 2011) (alteration in original) (internal quotation

marks omitted) (quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)).

Based on this principle, MGM contends that to whatever extent Plaintiff's argument

is based on the terms of the Labor Agreement—for example, that she was qualified

for the jobs at issue because the Labor Agreement provides that an applicant's

experience may be an acceptable alternative to a license requirement—that argument

is barred by the Section 301 preemption doctrine.

The problem with this argument is that on its face, the Section 301 preemption

doctrine applies only to state-law claims. Indeed, there is Sixth Circuit precedent

strongly suggesting that the preemption bar does not apply to federal claims like

Plaintiff's Title VII claim in this case. In *Watts v. United Parcel Serv., Inc.*, 701 F.3d

188 (6th Cir. 2012), the Sixth Circuit rejected an employer-defendant's argument

that the plaintiff's federal discrimination claim under the Americans with

Disabilities Act ("**ADA**") was "preempted by § 301 because it involve[d]

interpretation of the CBA" that governed the parties' employment relationship. *Id.*

at 191. The Sixth Circuit explained that the "animating purpose of § 301 preemption

is to ensure that federal labor law uniformly prevails over inconsistent interpretations

of CBAs by state courts," but that "[w]hen a claim asserts a right arising under federal law, and is filed in federal court, that rationale does not apply." *Id.* (citations omitted). The Sixth Circuit also noted that "the right to be free from disability discrimination that [the plaintiff] seeks to vindicate in this action does not arise from the CBA or from state law; rather, it is founded on the ADA." *Id.* (citations omitted). And although *Watts* concerned an ADA claim rather than a Title VII claim, the Sixth Circuit based its conclusion in that case partly on an observation that "[a] number of district courts have concluded that the preemption doctrine is inapposite when applied to federal anti-discrimination claims," and cited various district court cases that included decisions regarding Title VII claims. *Id.* at 191 n.2 (collecting cases).

*Watts* compels the conclusion that Section 301 preemption does not apply to Title VII claims. If this is the case, even though Plaintiff's state-law ELCRA claim might be preempted, that fact would make little practical difference because Plaintiff's Title VII claim is not preempted. The Court denies summary judgment to MGM based on the Section 301 preemption doctrine.

## B.     2015 Lateral Transfer Application

In its Motion for Summary Judgment, MGM cabins its argument to the two promotions that it denied Plaintiff in 2016: the "Engineer II – FACE Team" position that Weldon was awarded, and the "Engineer III – Journeyman" position that Davis was awarded. Plaintiff discusses these staffing decisions in her Response, but also

discusses MGM's earlier selection of Weldon over Plaintiff for the "Engineer I –
FACE Team" position in 2015. MGM counters in its Reply that any claim based on
that promotion decision must fail because Plaintiff did not file an EEOC charge
concerning it and did not include it in the EEOC charge she did file, which in turn
means that (1) a claim on this basis is barred for Plaintiff's failure to meet Title VII's
administrative exhaustion requirement, and (2) any such claim is now untimely.[4]

When it comes to Plaintiff's Title VII claim, MGM's argument merits
discussion. "Before a plaintiff may sue under Title VII in federal court, she must
first exhaust her administrative remedies, one component of which is timely filing a
'charge' with the EEOC." *Williams v. CSX Transp. Co.*, 643 F.3d 502, 507–08 (6th
Cir. 2011) (citing 42 U.S.C. §§ 2000e–5(e)-(f) and *Younis v. Pinnacle Airlines, Inc.*,
610 F.3d 359, 362 (6th Cir. 2010)). Further, "[a]s a general rule, a Title VII plaintiff
cannot bring claims in a lawsuit that were not included in his EEOC charge." *Younis*,
610 F.3d at 361 (citing 42 U.S.C. § 2000e-5(f)(1) and *Alexander v. Gardner-Denver
Co.*, 415 U.S. 36, 47 (1974)). Although it is not necessary for the Plaintiff's EEOC
charge to have "specifically invoke[d]" every discrimination claim later asserted in

---

[4] In the Complaint, Plaintiff also alleged discrimination on MGM's part with respect
to other events related to her employment, including denial of training opportunities
as well as Plaintiff's termination and eventual reinstatement in or around 2013. The
parties have not adequately evidenced or argued these other potential factual bases
for Plaintiff's discrimination claims in their briefing on MGM's Motion for
Summary Judgment, however, and the Court will therefore treat them as abandoned.

court for those claims to be viable, the claims that were *not* specifically invoked in the EEOC charge "must, at a minimum, 'reasonably relate[ ] to or grow out of the factual allegations' stated in the charge." *Golden v. Mirabile Inv. Corp.*, 724 F. App'x 441, 445 (6th Cir. 2018) (alteration in original) (quoting *Younis*, 610 F.3d at 362). The Sixth Circuit has found that instances of alleged discrimination that are significantly factually distinct or remote in time from those set forth in the plaintiff's EEOC charge do not meet this standard. *See*, *e.g.*, *id.* (plaintiff's "claim that he experienced a hostile work environment and his claims that he was denied promotions, bonuses, raises, and better job assignments because of his race or gender patently do not grow out of or reasonabl[y] relate to his termination, which is the basis of his EEOC charge"); *Deister v. Auto Club Ins. Ass'n*, 647 F. App'x 652, 658 (6th Cir. 2016) (EEOC charge alleging disability discrimination did not exhaust a retaliation claim because plaintiff "failed to check the box in his EEOC form entitled 'retaliation,'" and the EEOC charge's "narrative section [did not] include facts that would suggest that he intended to bring an ADA retaliation claim"); *Jenkins v. Foot Locker Inc.*, 598 F. App'x 346, 349–50 (6th Cir. 2015) (failure-to-promote and pay discrimination claims did not reasonably relate to employer's failure to rehire plaintiff three years later, which was alleged in the EEOC charge).

Yet even if Plaintiff has failed to exhaust her Title VII claim based on the 2015 transfer denial, the practical effect of this is minimal since she has also asserted

a Michigan ELCRA claim based on that allegation, and Title VII's exhaustion requirement does not apply to ELCRA claims. Thus, since Plaintiff filed this action within the three-year limitations period that applies to ELCRA claims, *see Bell v. CSX Transp., Inc.*, 172 F. Supp. 2d 933, 937 (E.D. Mich. 2001), Plaintiff's discrimination claim based on the 2015 transfer denial is properly before this Court irrespective of the contents of Plaintiff's EEOC charge.

As to the merits of this claim, the dispute centers on the second and fourth prongs of the *prima facie* standard: whether Plaintiff applied to and was qualified for the position at issue, and whether the position was awarded to a similarly situated individual outside of Plaintiff's protected class. Plaintiff argues that Weldon, who received the position instead of her, had at that point been a Maintenance Trainee for only six months, and adds that she "was never told why Mr. Weldon and his six months of experience[5] were chosen over her, and her sixteen years of experience, but the decision was not surprising as Mr. Valentine and Mr. Lewis had never promoted any women." (Pl.'s Resp. at 6, Pg ID 231.) MGM responds that Weldon

---

[5] Weldon's employment history indicates that while he began his employment with MGM in 2007, he worked in housekeeping in the hotel until June 2014, when he became a Maintenance Trainee. (Pl.'s Resp. Ex. F, Weldon Job History.) The employment history also indicates that Weldon became an Engineer I in May 2015. The record shows that Weldon was on personal leave for three to four months during that time for reasons unrelated to his employment with MGM (Weldon Dep. 29:15-24), and this is presumably the basis for Plaintiff's characterization of him as having "six months of experience" (Pl.'s Resp. at 6, Pg ID 231).

was more qualified for the position than Plaintiff was for several reasons: (1) his period as a Maintenance Trainee had been spent on the FACE Team (i.e., the hotel-based team that the position at issue was part of), and he had taken maintenance calls on behalf of an Engineer II-level associate on that team; (2) he had been continuing his professional education outside of his job responsibilities, unlike Plaintiff; and (3) MGM has generally promoted FACE Team members internally based on their training and experience. (*See* Def.'s Reply at 6, Pg ID 325.)

In short, MGM asserts that Plaintiff was not as qualified as Weldon was for the position to which Plaintiff sought a lateral transfer in 2015. Sixth Circuit precedent is conflicting as to whether a plaintiff must show that she was similarly qualified to the comparator employee in order meet the Title VII *prima facie* standard. *Compare White*, 429 F.3d at 241-42 ("[I]t is insufficient for a plaintiff in a failure to promote sex discrimination case merely to point to a man who received the job in satisfying the fourth prong. . . . We hold that in order to satisfy the fourth prong of the prima facie burden in a failure to promote case, it is incumbent upon the plaintiff to establish that she and the non-protected person who ultimately was hired for the desired position had similar qualifications.") *with Vincent v. Brewer Co.*, 514 F.3d 489, 495 (6th Cir. 2007) ("This court has repeatedly stated that the fourth element [of the *prima facie* case] requires a plaintiff to show only that she was replaced by a person outside the protected class. Nowhere does this oft repeated

standard suggest that a plaintiff and her replacement must be similarly qualified.") (internal quotation marks and citations omitted).

This Court will follow the Sixth Circuit's reasoning in *Vincent*. Plaintiff Gibson, like the plaintiff in *Vincent*, "has offered several pieces of evidence that are collectively sufficient to suggest pretext." *Vincent*, 514 F.3d at 497. These include: (1) the overall absence of any indication that MGM has promoted female employees in Plaintiff's department, except for one Engineer III in the Painter classification (*see* Def.'s Mot. at 4, Pg ID 92); (2) the way in which MGM's decision not to award Plaintiff the lateral transfer in 2015 effectively created a barrier to her ability to secure a position on the FACE Team, through the "Engineer II – FACE Team" position or otherwise in the normal course of her employment[6]; and (3) the fact that MGM called upon Plaintiff to work in the hotel on certain occasions when FACE Team members were not available (Gibson Dep. 48:18-49:7, 81:16-82:2; Valentine Dep. 21:3-10). Thus, Plaintiff did have some work experience in the hotel.

The Court thus finds that "a jury could reasonably conclude that [Plaintiff's] termination was motivated by her gender rather than by her work performance." *Vincent*, 514 F.3d at 497.

---

[6] In this regard, Plaintiff testified that she could not avail herself of the opportunity, as an Engineer I, to shadow Maintenance Trainees who worked in the hotel without effectively having to "take a demotion." (Gibson Dep. 55:4-7.)

## C. 2016 Application for E-II Position

Another basis for Plaintiff's discrimination claim is MGM's failure to hire Plaintiff into the "Engineer II – FACE Team" position to which she applied in 2016. This position was also awarded to Weldon instead of Plaintiff. The reasoning stated above in the discussion of the lateral transfer application applies to this 2016 application for the "Engineer II – FACE Team" position as well.

Plaintiff raises several distinct arguments against summary judgment in this claim. First, she contends that in the 17 years she spent as a Maintenance Trainee and then an Engineer I at MGM, she performed the same work as employees in both the Engineer II and the more senior Engineer III classifications. She testified to this in her deposition:

> Q. Okay. So you have the certification for plumbing, but if there was a mandated regulatory requirement for more qualified plumbing work such as something that would require a journeyman to perform, you understand you wouldn't be able to do that work, right?
> A. I do journeyman work now, yes.
> Q. You do it now?
> A. Yes.
> Q. Okay. What journeyman work do you do currently?
> A. I do everything the Plumber 3s do. We have the same exact workload and work -- the actual work given. They plunge toilets. I plunge toilets. They do the pool checks. I do the pool checks. They re-pipe copper. I re-pipe copper. I do exactly what they do.
> Q. Okay. But do you know if they do anything in addition to that?
> A. They don't. We do the same work.
> Q. Okay. They don't do any more involved plumbing work than that?

A. Not that I'm aware of. I'm with -- according to their work log, they do what I do. And when I'm working directly with the one, we're doing the same thing.

Q Okay. But you don't supervis[e] the E3s, right?

A. No.

Q. Okay. So you don't know what they're doing --

A. Yes.

Q. -- when you're not around?

A. On my shift, yes, because either the call comes on the radio or it's either the manager will call them to do something and I know what they're doing or it goes to their device, and we communicate all the time.

(Gibson Dep. 44:20-46:4.)

Second, Plaintiff argues that the experience disparity between herself and Weldon renders the higher marks that Valentine and Lewis gave to Weldon less than fully credible, suggesting that the scores "were skewed in favor of Mr. Weldon and did not reflect the candidates' actual abilities." (Pl.'s Resp. at 8, Pg ID 233.)

Third, Plaintiff compares her qualifications to Weldon's in light of the specific job requirements for Engineer II positions set forth in the Labor Agreement:

- Minimum of 3-5 years building maintenance experience in the hospitality or service industry or 3-5 years building maintenance skills that are transferable to the hospitality or service industry.
- Trade related certification or license where mandated by trade regulatory requirements. Five (5) years of trade experience may be an acceptable alternative for license requirements.

- 2-5 years' experience in K&R.[7]
- CFC Type II or better qualification.
- HVAC 3rd Class Refrigeration license.
- Passage of electrical courses.

(Pl.'s Resp. at 8-9; Labor Agreement at 109, Pg ID 122.) Plaintiff asserts that Weldon did not meet these job prerequisites at the time the promotion decision was made in 2016, but that she did. And although Plaintiff does not frame this argument in terms of the four elements of the *prima facie* case, the crux of the argument is that Plaintiff has satisfied the two prongs of that standard that are at issue as to each theory of the discrimination claim in this case: i.e., that she was qualified for the position, and that the position was awarded to a similarly situated male employee. The Court, taking the evidence in the light most favorable to the non-moving party, agrees and denies MGM's Motion for Summary Judgment as to this claim.

With respect to the four specific requirements in the Labor Agreement quoted above, moreover, it is noteworthy that Weldon also did not meet all of these requirements. Specifically, he testified that while he had passed electrical courses, he did not meet the other three specified qualifications at the time he interviewed for the job. (Weldon Dep. 20:15-21:5.)

Drawing all reasonable inferences in favor of Plaintiff as the non-movant, a

---

[7] "K&R" is shorthand for "Kitchen and Refrigeration." (See Def.'s Mot. at 1, Pg ID 89; Gibson Dep. 18:7-12.)

reasonable jury could find, based on Weldon's relatively minimal experience repairing guest-room technology and the fact that he did not possess most of the certifications specified in the Labor Agreement as required for Engineer II positions, that Plaintiff has raised sufficient issues of material fact to establish a *prima facie* case.

Plaintiff has raised genuine issues of material fact as to the pretextual character of MGM's stated rationale for its decision to award the "Engineer II – FACE Team" position to Weldon. Thus, MGM is not entitled to summary judgment on Plaintiff's Title VII and ELCRA claims insofar as they are based on that decision.

## D. 2016 Application for E-III Position

The other factual basis for Plaintiff's Title VII and ELCRA discrimination claims that the parties have addressed is MGM's hiring of Joseph Davis instead of Plaintiff into the "Engineer III – Journeyman" position to which Plaintiff applied in 2016. This discrimination claim on this basis also survives summary judgment.

MGM argues that Plaintiff cannot make a *prima facie* case on this basis for her discrimination claims because MGM's internal job description expressly required a journeyman's license for this position (*see* Def.'s Mot. Ex. G, E-III Description at Pg ID 155.), and because it is undisputed that Plaintiff did not possess

26

such a license, while Davis did.[8]

Plaintiff offers several arguments in her Response. First, she argues that she met the journeyman's license requirement pursuant to the Labor Agreement, which includes among the qualifications for Engineer III positions: "Trade related certification or license where mandated by trade regulatory requirements. Eight (8) years of experience may be an acceptable alternative for the license requirement[.]" (Labor Agreement at 110, Pg ID 123.) Accordingly, Plaintiff contends, she was in fact qualified for the position. Second, Plaintiff argues that to whatever extent MGM claims that a journeyman's license was a strict requirement, this argument is undermined by the fact that in 2012, MGM hired a new employee into an Engineer III position who did not have a valid Michigan journeyman's license. Finally, Plaintiff argues that MGM's discriminatory motive is evidenced by "false fabricated statements" that Lewis and Valentine wrote on her Interview Rating Sheet in order to justify the promotion decisions. (Pl.'s Resp. at 13, Pg ID 238.) These include the statements by both Lewis and Valentine that Plaintiff did not possess a journeyman's license, and the statement by Valentine that Plaintiff "said she [does] not know the hotel – but she should get the job – worked here 17 years." (Def.'s Mot. Ex. K,

---

[8] MGM also contends that any argument by Plaintiff that she was qualified through experience pursuant to the Labor Agreement is preempted, but as discussed above, the Section 301 preemption doctrine very likely does not apply to Title VII claims, and this Court does not reach that issue in adjudicating MGM's Motion.

Gibson Interview Materials at 173, 177.) Plaintiff has testified that she was called upon on multiple occasions to do repairs at the hotel. (Gibson Dep. 48:18-49:7, 81:16-82:2.)

In its Reply, MGM acknowledges that the Labor Agreement does provide for work experience as an alternative qualification to a journeyman's license. Further, as to Valentine's note that Plaintiff "said she does not know the hotel," Plaintiff claims that she worked primarily in the Casino, but still worked in the hotel as well" (Pl.'s Resp. at 14-15, Pg ID 239-40), and testified in her deposition that in the course of her employment she answered plumbing maintenance calls in the hotel "a few times" (Gibson Dep. 48:18-21). Plaintiff further testified: "Hotel customer service is the same as casino customer service, I would believe. Customer service is customer service. But I've never worked in the hotel, and neither has any of the other employees that got the job and the proper training." (Gibson Dep. 82:10-16.)

Plaintiff's argument that MGM has hired applicants without journeyman's licenses for Engineer III positions in the past is supported by such an applicant—William Walker, who MGM hired as an Engineer III in 2012. Plaintiff argues that since Walker possessed a journeyman's license issued by the city of Phoenix, and since the state of Michigan does not recognize plumbing licenses from other jurisdictions, Walker did not possess a valid Michigan journeyman's license when he applied to MGM and was therefore no different from Plaintiff, given that his

application depended on experience rather than a valid journeyman's license. Plaintiff supports this argument with language drawn from the website of Michigan's Department of Licensing and Regulatory Affairs ("**LARA**"), which indicates that "[t]he state of Michigan does not reciprocate with any other state or country for plumbing licensing. As a result, you are required to pass an examination to receive a license to perform plumbing work in Michigan." (Pl.'s Resp. Ex. M, LARA Website at 2, Pg ID 309.)

MGM's hiring of Walker at the Engineer III level creates a genuine issue of material fact as to the consistency of MGM's licensing requirement for that position.

Accordingly, to the extent that Plaintiff's claims are based on MGM's staffing of the Engineer III position in 2016, MGM is not entitled to summary judgment on those claims either.

## IV. CONCLUSION

For the reasons stated above, the Court hereby DENIES Defendant MGM Grand Detroit, LLC's Motion for Summary Judgment (ECF No. 13).

IT IS SO ORDERED.

Paul D. Borman
United States District Judge

Dated: 8 |31| 18