UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERESA GIBSON,

Case No. 17-12127

        Plaintiff,

v.

Paul D. Borman
United States District Judge

MGM GRAND DETROIT, LLC,

        Defendant.

_____/

ORDER
(1) WITHDRAWING OPINION AND ORDER OF AUGUST 31, 2018, DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF #28)
(2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

Subsequent to this Court's hearing on Defendant's Motion for Summary Judgment

on August 22, 2018, and its Opinion and Order of August 31, 2018, Denying Defendant

Summary Judgment (ECF #28), the United States Court of Appeals for the Sixth Circuit

issued its opinion in *Paula McDaniels v. Plymouth-Canton Community Schools (PCCS)*,

__Fed. App'x__, 2018 WL 5734695, November 1, 2018 (6ᵗʰ Cir. 2018).  The *McDaniels*

Opinion affirmed U.S. District Judge Avern Cohn's grant of Defendant's Motion for

Summary Judgment on her claims of gender discrimination under Title VII and

Michigan's Elliott-Larsen Civil Rights Act (ELCRA), as well as its dismissal of her

FMLA retaliation claim.

Given the similarity between the facts and the legal issues in *McDaniels* and the

instant case, on November 15, 2018, this Court ordered "Briefing on the Relevance to this Case" of the *McDaniels* opinion. (ECF #42) On November 29, 2018, Defendant MGM Grand Detroit filed its brief (ECF #44), and on December 12, 2018, Plaintiff Teresa Gibson filed her brief. (ECF #45)

The Court, having read the Sixth Circuit *McDaniels* opinion, the parties' post-*McDaniels* briefs, and having reread this Court's Opinion and Order of August 31, 2018, withdraws its initial August 31, 2018 opinion denying Defendant MGM Grand's Motion for Summary Judgment (ECF #28), and now grants Defendant's Motion for Summary Judgment for the reasons set forth *infra*.

## II.  BACKGROUND

This is a gender discrimination lawsuit under Federal Title VII and the Michigan Elliott-Larsen Civil Rights Act (ELCRA). Plaintiff Teresa Gibson has worked for Defendant MGM Grand Detroit, LLC ("MGM") since 1999. MGM operates a casino/hotel in Detroit.  Her complaint alleges that MGM discriminated against her with respect to the terms of her employment because she is a female. Three specific staffing decisions by MGM are at issue: MGM's denial of Plaintiff's application for a lateral transfer from her position in the casino to a position in the hotel in 2015, and its denial of her two applications for promotion to more senior positions that Plaintiff had applied for in early 2016.

MGM has moved for summary judgment. Although Plaintiff has at least arguably satisfied her burden of establishing a *prima facie* case as to one or more of the asserted

grounds for her discrimination claims, she has failed to raise a genuine issue of material fact as to whether the nondiscriminatory explanations that MGM has proffered for the challenged decisions is pretextual.

A.  Factual Background

1.  Labor Agreement and Relevant Positions at MGM

The parties do not dispute that a collective bargaining agreement was in effect at all pertinent times: specifically, a Labor Agreement between MGM Grand Detroit and the Detroit Casino Council. (ECF No. 13, Def.'s Mot. Ex. A, Labor Agreement.) The job classifications at issue in this case are contained in a section of the Labor Agreement entitled "Side Letter #1: Facilities Department Maintenance Trainees and Engineers." (Labor Agreement at 107, Pg ID 120.) That section describes two broad occupational categories: Maintenance Trainees and Engineers. (*See id.* at 107-11, Pg ID 120-24.)

The prerequisite for a Maintenance Trainee is "a High School diploma or GED, and mechanical aptitude," and Maintenance Trainees range in rank from Level I to Level IV. (*Id.* at 107-08, Pg ID 120-21.)  The prerequisite for all Engineers is "a minimum of two (2) years' experience in building maintenance in the hospitality or service industry or two (2) years building maintenance skills that are transferable to the hospitality or service industry." (*Id.* at 108, Pg ID 120.) The Labor Agreement identifies three classifications of Engineers: Engineer I, Engineer II, and Engineer III – Journeyman. The Engineer I classification lists only "[t]rade related certification or license where mandated by trade regulatory requirements" as a prerequisite in addition to the two years of experience

3

mentioned above. (*Id.*) Engineer II and Engineer III have more elaborate qualification requirements, and indeed, both Engineer II and Engineer III are broken into four specialty subcategories: "Engineer," "Carpenter," "Painter," and "Pit Technician." (*Id.* at 109-111.)

Article 7.05 of the Labor Agreement is relevant to this case, and it provides as follows:

> a. When a vacancy exists after the provisions of this Agreement for transfers within classification have been fulfilled, the vacancy shall be posted as a promotional opportunity. Bargaining unit Employees shall be awarded promotional opportunities for which they are qualified before new Employees are hired. The qualifications required for a position will be determined by the Employer; such determination shall not be arbitrary or capricious.
> b. When more than one bargaining unit Employee desires a particular promotional opportunity, the Employer will consider the Employee's house seniority, qualifications to perform the work, and employment record for the previous six (6) months. When qualifications to perform the work are equal, the senior Employee shall be the one promoted.
> c. A "promotional opportunity" shall be deemed to be a transfer to another classification in which the transferred Employee has an opportunity for increased income or for subsequent job progression.
> d. Permanent vacancies to be filled by promotion under this Section shall be posted for seven (7) days in locations to which Employees have regular access. The Employer may fill the vacancy temporarily during the transfer period.
> e. An Employee promoted under this Section who cannot perform satisfactorily the work of the job to which promoted shall be transferred back to his/her former job, shift and station, within thirty (30) shifts worked after the date of the promotion.

(*Id.* at 14, Pg ID 119.)

### 2. Plaintiff's Work History at MGM

4

Plaintiff began working for MGM in 1999 as a Maintenance Trainee, and was promoted to Engineer I in 2002. (ECF No. 22, Deposition of Teresa Gibson at 16:10-11, 17:2-7.) In or around 2002 and 2003, Plaintiff successfully completed adult-education courses in plumbing at the Detroit Public Schools' A. Philip Randolph Career and Technical Center, and had received tuition reimbursement from MGM for those courses. (Def.'s Mot. Ex. C, Plumbing Course Certificates; Gibson Dep. 16:18-19, 17:25-19:1.) Plaintiff testified that the certification that she received from these courses was necessary for her to advance from Maintenance Trainee to Engineer I. (Gibson Dep. 16:18-17:1.) Plaintiff further testified that she has not undertaken any other continuing professional education programs since 2002-03. (Gibson Dep. 18:24-19:1, 19:18-21.)

Plaintiff's responsibilities as an Engineer I during the relevant time period were to repair plumbing issues that arose in the womens' restrooms, the "back of the house" restrooms, and the kitchens, all of which were located in the casino. (Gibson Dep. 19:25-20:14.) Plaintiff testified that although her Engineer I position did not include electrical or carpentry work, she did at different times do some work within those areas, in that she "replaced . . . receptacles, sockets and things" and changed light bulbs, and also "worked in the carpentry shop." (Gibson Dep. 20:17-25.)

The parties agree that the promotion decisions at issue in this case, the context for which is provided below, were made by two male managers in the engineering department: Jimmie Valentine and Ernest Lewis. (*See* Def.'s Mot. at 7, Pg ID 95; ECF No. 19, Pl.'s Resp. at 2, Pg ID 227.) Although Lewis testified that he has not promoted

any female employees since he became a manager in or around 2011, he further testified that Plaintiff was the only female employee he was tasked with interviewing during that time, and that both of the female job applicants he interviewed during that time were offered the jobs they had applied for. (ECF No. 26, Deposition of Ernest Lewis at 11:14-12:3, 29:7-19.) Valentine testified that while decisions to promote female employees during his tenure have been made by the collective bargaining committee and the human resources department, he did recall being personally involved in the decision to promote one female Engineering Department employee, Amy Winton. (ECF No. 23, Deposition of Jimmie Valentine at 43:23-47:2.)

In 2015, Plaintiff applied for a lateral Engineer I position on the "FACE team,[1]" that would have transferred her from working in the casino to working exclusively in the hotel. Plaintiff's application was not successful; Maintenance Trainee Marcus Weldon was hired instead. (Pl.'s Resp. Ex. F, Weldon Job History; ECF No. 20, Def.'s Reply Ex. C, Deposition of Marcus Weldon at 8:24-25.)

Plaintiff applied for two other positions in early 2016—an "Engineer II – FACE Team" position, and an "Engineer III – Plumber" position. She interviewed for both jobs on March 2, 2016. Following the interview, both Valentine and Lewis filled out an "Interview Rating Sheet" an evaluating Plaintiff's candidacy for the two positions. (Def.'s

---

[1] The "FACE team" is comprised of MGM employees who work in the hotel only. (*See* Def.'s Mot. at 1, Pg ID 89; Pl.'s Resp. at 6, Pg ID 231.) "FACE" is an acronym that stands for "Fix And Clean Everything." (*See* Def.'s Mot. at 4, Pg ID 92; Gibson Dep. 49:11-12.)

Mot. Ex. K, Gibson Interview Materials.) The Interview Rating Sheet consists of a quantitative rating section in which the evaluator rates the candidate on a scale of 1 to 5 in various categories; a narrative section for "Overall Comments"; and a section where the evaluator checks one of two boxes indicating "Recommended" or "Not Recommended." (*Id.*) In the quantitative section of Plaintiff's Interview Rating Sheet, on a scale of 1 to 5, Valentine rated Plaintiff at 2 in "Technical Expertise," 3 in "Business Acumen," 3 in "Customer Focus," 3 in "Interpersonal Communication," 3 in "Teamwork," 2 in "Related Education/Training," and "N/A" in "Computer Skills (where applicable)." An optional portion of the quantitative ratings section that applies only to "positions that will supervise others" was left blank. In the "Overall Comments" section, Valentine wrote: "Dose [*sic*] not have a journeyman license[2] and said she dose [*sic*] not know the hotel – but she should get the job – worked here 17 years." In the final section, Valentine checked the box for "Not Recommended." (*Id.* at Pg ID 173.)

On Lewis's Interview Rating Sheet, Plaintiff received identical scores in the quantitative ratings section. In the "Overall Comments" section, Lewis wrote:

> Plumber III – Candidate doesn't have a journey man's
> plumbers [*sic*] license. <Required for position>.
> Plumber II – Candidate has never worked in a hotel and has

[2] MGM's internal job description for the "Engineer III – Journeyman" position included, under the heading "Knowledge, Skills and Abilities," the phrase "Journeyman license required." (Def.'s Mot. Ex. G, E-III Description at Pg ID 155.) The analogous job description for the "Engineer II – FACE Team" position did not have a comparable requirement. (Def.'s Mot. Ex. H, E-II Description at Pg ID 158.)

no experience with Bartech, NXTV, InnCom.[3]

(*Id.* at Pg ID 177.) Lewis also checked the box indicating "Not Recommended" in the final section. (*Id.*)

Plaintiff was not hired into either of the two jobs. The "Engineer II – FACE Team" position went to Weldon. Valentine and Lewis gave Weldon the same quantitative scores in the Interview Rating Sheets they filled out for him: 4 in "Technical Expertise," 4 in "Business Acumen," 5 in "Customer Focus," 5 in "Interpersonal Communication," 4 in "Teamwork," 4 in "Related Education/Training," and "N/A" in "Computer Skills (where applicable)." (Pl.'s Resp. Ex. H, Weldon Interview Materials at Pg ID 290-91.) In the narrative section on his Interview Rating Sheet for Weldon, Valentine wrote: "Will work well in guest service of the hotel & repair service. Has done guest call's [*sic*] and did a good job at it." (*Id.* at Pg ID 291.) On his, Lewis wrote: "Great interview. Candidate is very knowledgeable in hotel service, engineer mechanical skills. Obtained AAS from HFCC while working with the company. Recommended for promotion & Eng. II position." (*Id.* at Pg ID 290.)

The "Engineer III – Journeyman" position was awarded to Joseph Davis, an outside candidate and thus a new hire. (Valentine Dep. 50:11-51:19; Lewis Dep. 27:4-7.) Lewis rated Davis at 5 in "Technical Expertise," 4 in "Business Acumen," 5 in "Customer Focus," 4 in "Interpersonal Communication," 4 in "Teamwork," 5 in "Related

---

[3] MGM represents that "[t]he 'Bartech, Inncom and NXTV systems' include the television and guest bar systems in the hotel's guest rooms." (Def.'s Mot. at 7, Pg ID 95.)

Education/Training," and "N/A" in "Computer Skills (where applicable)." (Pl.'s Resp. Ex. O, Davis Interview Materials at Pg ID 317.) Valentine gave Davis the same scores, except that he gave Davis a 5 in "Business Acumen" instead of a 4, as Lewis had. (*Id.* at Pg ID 318.) In the narrative section on his Interview Rating Sheet for Davis, Valentine wrote: "Would work well with the team." (*Id.*) On his, Lewis wrote: "Great candidate, very knowledgeable." (*Id.* at Pg ID 317.)

B. Procedural History

On March 16, 2016, Plaintiff's union filed a grievance on Plaintiff's behalf regarding MGM's staffing of the "Engineer II – FACE Team" position. The Grievance Report stated that "[t]he employer is in clear and direct violation of the Collective Bargaining Agreement, including but not limited to: Article 7.05 by incorrectly filling a promotional opportunity for an Engineer II position." (Def.'s Mot. Ex. O, Grievance Report.) The Grievance Report then stated: "Remedy Sought: Immediately award the promotion in accordance with the Collective Bargaining Agreement and make affected member whole for lost wages and benefits." (*Id.*) MGM represents in its Motion for Summary Judgment that this grievance "was never pursued by the union and is no longer pending," and also that the union did not file any grievance regarding the staffing of the "Engineer III – Journeyman" position. (Def.'s Mot. at 12, Pg ID 100.) Plaintiff does not dispute either of these statements in her Response to MGM's Motion, and in fact makes no mention of any grievance in her Response (or for that matter in the Complaint) at all. Plaintiff testified in her February 2018 deposition that to her knowledge, the grievance

was not still pending, and that her union did not file any separate grievance concerning

the Engineer III position. (Gibson Dep. 10:12-14, 75:14-19.) She also testified as follows:

> Q. . . . And what happened? What was the result of this
> grievance; do you recall?
> A. I think it was just like every other grievance. It was denied.
> I believe that's pretty much when I decided to -- I think I took
> some time off of work. Got tired of being denied all the time,
> so . . .
> Q. The union didn't take this to arbitration?
> A. No.
> Q. Okay. As far as you know, this grievance is not active?
> A. I've -- never heard anything else about it. I don't even
> remember this grievance. I've grieved so many positions, and
> I felt like the union wasn't doing anything for me at that point.
> That's why I obtained an attorney.

(Gibson Dep. 75:20-76:9.)

Plaintiff also filed an EEOC Charge of Discrimination on March 21, 2016. (Def.'s

Reply Ex. B, EEOC Charge.) The narrative statement in Plaintiff's EEOC Charge reads

as follows:

> I began my employment with the above-mentioned employer
> on May 28, 1999. I am currently employed as an Engineer
> One.
> On February 1, 2016, and again on February 26, 2016, I
> applied for two separate positions. One position for an
> Engineer Two and the second one Engineer Three. The first
> position was awarded to a less senior less qualified employee;
> the second was awarded to an outside employee. I have the
> most seniority.
> I believe I was denied promotional opportunities due to my
> gender, female, in violation of Title VII of the Civil Rights
> Act of 1964, as amended.

(*Id.* at Pg ID 363.) Plaintiff testified that she did not file any other EEOC Charges.

(Gibson Dep. 98:3-21.) The parties have not expressly stated the outcome of Plaintiff's

March 21, 2016 EEOC Charge.

On May 25, 2017, Plaintiff filed this action in the Wayne County Circuit Court;

MGM removed it to this Court on June 29, 2017. (ECF No. 1.) Plaintiff's Complaint sets

forth only one count ("Gender/Sex Discrimination"), but identifies both Title VII and

Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101 *et

seq.*, as statutory bases for the lawsuit. (ECF No. 1 Ex A., Pg ID 10-15 (hereinafter

"Compl.").) In addition to the factual allegations regarding the staffing decisions

described above, the Complaint alleges as follows:

> 13. Plaintiff was denied training while male employees all
> received 2 weeks of training.
> 14. Plaintiff applied for the Plumber's Position several times
> and each time was denied the job, even though she worked as
> the only plumber for years in the entire building.
> 15. Plaintiff has been told that because she does not have a
> plumber's license she has to stay a Plumber 1, while Bill
> Walker, a male who does not have a plumber's license is
> allowed to be a Plumber 3.
> 16. Plaintiffs manager, Jimmy Valentine told Plaintiff that she
> hasn't been to school and doesn't have a certificate, however
> MGM paid for her classes in 2002 so she is a certified
> plumber.
> 17. On or about 2013 Plaintiff was terminated for allegedly
> damaging a vehicle while other male individuals accused of
> doing the same thing received either a 1 day suspension or no
> discipline at all.
> 18. When Plaintiff was terminated they hired a brand new
> employee in as Plumber 3.
> 19. After Plaintiff won her arbitration and was awarded her
> job back, instead of giving her the Plumber 3 position it was
> given to a male with less experience.

Compl. ¶¶ 13-19.) Plaintiff also alleged in the Complaint that MGM violated its duties under the applicable statutes by "[r]etaliating against employees who make complaints of discrimination and harassment," and by "[f]ailing to take serious and corrective action when informed by Plaintiff that the conduct towards her was unlawful." (Compl. ¶¶ 32(b)-(c).)

## III.  LEGAL STANDARDS

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of a motion for summary judgment where proof of that fact 'would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.'" *Dekarske v. Fed. Exp. Corp.*, 294 F.R.D. 68, 77 (E.D. Mich. 2013) (Borman, J.) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"In deciding a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party." *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). At the same time, the non-movant must produce enough evidence to allow a reasonable jury to find in his or her favor by a preponderance of the evidence, *Anderson*, 477 U.S. at 252, and "[t]he 'mere possibility' of a factual dispute does not suffice to

create a triable case." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004) (quoting

*Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Instead, "the non-

moving party must be able to show sufficient probative evidence [that] would permit a

finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale v.

City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (quoting *Lewis v. Philip Morris Inc.*,

355 F.3d 515, 533 (6th Cir. 2004)). "The test is whether the party bearing the burden of

proof has presented a jury question as to each element in the case. The plaintiff must

present more than a mere scintilla of the evidence. To support his or her position, he or

she must present evidence on which the trier of fact could find for the plaintiff." *Davis v.

McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and citations

omitted). That evidence must be capable of presentation in a form that would be

admissible at trial. *See Alexander v. CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009).


## IV.  ANALYSIS

The following legal principles apply both to Plaintiff's Title VII claim and to her

ELCRA claim. *See Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 652–53 (6th

Cir. 2012) ("[C]ases brought pursuant to the ELCRA are analyzed under the same

evidentiary framework used in Title VII cases.") (internal quotation marks omitted)

(collecting authorities).

Title VII discrimination claims "can be proven by direct or circumstantial

evidence." *Id.* at 648–49 (6th Cir. 2012) (citing *DiCarlo v. Potter,* 358 F.3d 408, 414 (6th

Cir. 2004)). "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id.* at 649 (internal quotation marks omitted) (quoting *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir. 1999)). "Once there is credible direct evidence, the burden of persuasion shifts to the defendant to show that it would have terminated the plaintiff's employment had it not been motivated by discrimination." *Jacklyn*, 176 F.3d at 926.

"Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Ondricko*, 689 F.3d at 649 (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997)). "When a plaintiff proceeds on her claim using circumstantial evidence, she bears the burden of establishing a *prima facie* claim of discrimination under the tripartite *McDonnell-Douglas* framework." *White v. Columbus Metro. House. Auth.*, 429 F.3d 232, 238 (6th Cir. 2005) (citing *DiCarlo*, 358 F.3d at 414 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If a plaintiff makes an adequate showing as to the elements of her *prima facie* case, "the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for the employment decision at issue. If the defendant is able to meet this burden, the plaintiff must establish that the defendant's stated reason is mere pretext for its true discriminatory motives." *Id.* (citing *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 463 (6th Cir. 2003)). The plaintiff can accomplish this "by showing that the proffered reason (1) has no basis in fact, (2) did not

actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008) (internal quotation marks omitted) (quoting *Wexler v. White's Fine Furniture*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc)).

In this case, Plaintiff has offered no direct evidence of discriminatory motivation underlying any of MGM's challenged decisions. For her claims to survive summary judgment on the basis of circumstantial evidence, therefore, Plaintiff must first establish that a reasonable jury could find each of the elements of her *prima facie* case to be satisfied. As Plaintiff's claims all concern promotion decisions, Sixth Circuit precedent requires her to demonstrate that a reasonable jury could find for her on each of four elements:

> (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied.

*White v. Columbus Housing Authority*, 429 F.3d at 240 (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000)). There is no dispute in the instant case regarding the first or third prong of this standard: i.e., that Plaintiff is a member of a protected class, or that she was considered for and denied the positions she applied to. The live issues for Plaintiff's claims in this action are whether she was qualified for any position at issue, whether the position was awarded to an otherwise similarly situated

person outside the protected class (i.e., a male employee), or both.

If Plaintiff can make out a *prima facie* case as to any of the challenged personnel actions, and if MGM then articulates a legitimate, nondiscriminatory reason for that action, then it falls to Plaintiff to show the existence of a genuine issue of material fact as to whether MGM's stated reason is pretextual. For the reasons set forth *infra*, however, even if Plaintiff has satisfied her *prima facie* burden on any of the asserted bases for her discrimination claims, she has not met her burden as to pretext.

A. Section 301 Preemption

One threshold issue addressed at the outset, is whether, as MGM claims, the majority of Plaintiff's arguments are necessarily preempted by federal labor law. The principle behind MGM's preemption argument is that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim ... or dismissed as pre-empted by federal labor-contract law[.]" *CNH Am. LLC v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW)*, 645 F.3d 785, 798 (6th Cir. 2011) (alteration in original) (internal quotation marks omitted) (quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)). Based on this principle, MGM contends that to whatever extent Plaintiff's argument is based on the terms of the Labor Agreement—for example, that she was qualified for the jobs at issue because the Labor Agreement provides that an applicant's experience may be an acceptable alternative to a license requirement—that argument is barred by the Section 301 preemption doctrine.

The problem with this argument is that on its face, the Section 301 preemption doctrine applies only to *state-law* claims. Indeed, there is Sixth Circuit precedent strongly suggesting that the preemption bar does not apply to federal claims like Plaintiff's Title VII claim in this case. In *Watts v. United Parcel Serv., Inc.*, 701 F.3d 188 (6th Cir. 2012), the Sixth Circuit rejected an employer-defendant's argument that the plaintiff's federal discrimination claim under the Americans with Disabilities Act ("ADA") was "preempted by § 301 because it involve[d] interpretation of the CBA" that governed the parties' employment relationship. *Id.* at 191. The Sixth Circuit explained that the "animating purpose of § 301 preemption is to ensure that federal labor law uniformly prevails over inconsistent interpretations of CBAs by state courts," but that "[w]hen a claim asserts a right arising under federal law, and is filed in federal court, that rationale does not apply." *Id.* (citations omitted). The Sixth Circuit also noted that "the right to be free from disability discrimination that [the plaintiff] seeks to vindicate in this action does not arise from the CBA or from state law; rather, it is founded on the ADA." *Id.* (citations omitted). And although *Watts* concerned an ADA claim rather than a Title VII claim, the Sixth Circuit based its conclusion in that case partly on an observation that "[a] number of district courts have concluded that the preemption doctrine is inapposite when applied to federal anti-discrimination claims," and cited various district court cases that included decisions regarding Title VII claims. *Id.* at 191 n.2 (collecting cases).

*Watts* thus weighs clearly in favor of the conclusion that Section 301 preemption does not apply to Title VII claims. If this is the case, even though Plaintiff's state-law

ELCRA claim might be preempted, that fact would make little practical difference because Plaintiff's Title VII claim is not. Moreover, Plaintiff's discrimination claim—whether it is pursued under Title VII or under ELCRA—fails on the merits for the reasons articulated below. Accordingly, the Court need not reach the Section 301 preemption issue.

B.  2015 Lateral Transfer Application

In its Motion for Summary Judgment, MGM cabins its argument to the two promotions that it denied Plaintiff in 2016: the "Engineer II – FACE Team" position that Weldon was awarded, and the "Engineer III – Journeyman" position that Davis was awarded. Plaintiff discusses these staffing decisions in her Response, but also discusses MGM's earlier selection of Weldon over Plaintiff for the "Engineer I – FACE Team" position in 2015. MGM counters in its Reply that any claim based on that promotion decision must fail because Plaintiff did not file an EEOC charge concerning it and did not include it in the EEOC charge she did file, which in turn means that (1) a claim on this basis is barred for Plaintiff's failure to meet Title VII's administrative exhaustion requirement, and (2) any such claim is now untimely.

When it comes to Plaintiff's Title VII claim, MGM's argument has merit. "Before a plaintiff may sue under Title VII in federal court, she must first exhaust her administrative remedies, one component of which is timely filing a 'charge' with the EEOC." *Williams v. CSX Transp. Co.*, 643 F.3d 502, 507–08 (6th Cir. 2011) (citing 42 U.S.C. §§ 2000e–5(e)-(f) and *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th

Cir. 2010)). Further, "[a]s a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." *Younis*, 610 F.3d at 361 (citing 42 U.S.C. § 2000e-5(f)(1) and *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)). Although it is not necessary for the Plaintiff's EEOC charge to have "specifically invoke[d]" every discrimination claim later asserted in court for those claims to be viable, the claims that were *not* specifically invoked in the EEOC charge "must, at a minimum, 'reasonably relate[ ] to or grow out of the factual allegations' stated in the charge." *Golden v. Mirabile Inv. Corp.*, 724 F. App'x 441, 445 (6th Cir. 2018) (alteration in original) (quoting *Younis*, 610 F.3d at 362). The Sixth Circuit has found that instances of alleged discrimination that are significantly factually distinct or remote in time from those set forth in the plaintiff's EEOC charge do not meet this standard. *See*, *e.g.*, *id.* (plaintiff's "claim that he experienced a hostile work environment and his claims that he was denied promotions, bonuses, raises, and better job assignments because of his race or gender patently do not grow out of or reasonabl[y] relate to his termination, which is the basis of his EEOC charge"); *Deister v. Auto Club Ins. Ass'n*, 647 F. App'x 652, 658 (6th Cir. 2016) (EEOC charge alleging disability discrimination did not exhaust a retaliation claim because plaintiff "failed to check the box in his EEOC form entitled 'retaliation,'" and the EEOC charge's "narrative section [did not] include facts that would suggest that he intended to bring an ADA retaliation claim"); *Jenkins v. Foot Locker Inc.*, 598 F. App'x 346, 349–50 (6th Cir. 2015) (failure-to-promote and pay discrimination claims did not reasonably relate to employer's failure to rehire plaintiff three years later, which was

alleged in the EEOC charge).

Yet even if Plaintiff has failed to exhaust her Title VII claim based on the 2015 transfer denial, the practical effect of this is minimal since she has also asserted an ELCRA claim based on that allegation, and Title VII's exhaustion requirement does not apply to ELCRA claims. Thus, since Plaintiff filed this action within the three-year limitations period that applies to ELCRA claims, *see Bell v. CSX Transp., Inc.*, 172 F. Supp. 2d 933, 937 (E.D. Mich. 2001), this Court must still consider the merits of a gender discrimination claim based on the 2015 transfer denial.

As with Plaintiff's other claims, the dispute centers on the second and fourth prongs of the *prima facie* standard: whether Plaintiff applied to and was qualified for the position at issue, and whether the position was awarded to a similarly situated individual outside of Plaintiff's protected class. Plaintiff argues that Weldon, who received the position instead of her, had at that point been a Maintenance Trainee for only six months, and adds that she "was never told why Mr. Weldon and his six months of experience[4] were chosen over her, and her sixteen years of experience, but the decision was not surprising as Mr. Valentine and Mr. Lewis had never promoted any women." (Pl.'s Resp. at 6, Pg ID 231.) MGM responds that Weldon was more qualified for the position than

---

[4] Weldon's employment history indicates that while he began his employment with MGM in 2007, he worked in housekeeping until June 2014, when he became a Maintenance Trainee. (Pl.'s Resp. Ex. F, Weldon Job History.) The employment history indicates that Weldon became an Engineer I in May 2015, so his experience as a Maintenance Trainee prior to that promotion would likely have been ten or eleven months, and it is unclear what Plaintiff's assertion of six months is based on.

Plaintiff was for several reasons: (1) his period as a Maintenance Trainee had been spent on the FACE Team (i.e., the hotel-based team that the position at issue was part of), and he had taken maintenance calls on behalf of an Engineer II-level associate on that team; (2) he had been continuing his professional education outside of his job responsibilities, unlike Plaintiff; and (3) MGM has generally promoted FACE Team members internally based on their training and experience. (*See* Def.'s Reply at 6, Pg ID 325.) Further, as discussed *infra*, Valentine had been involved in the promotion of a female in the Engineering Department.

In short, MGM asserts that Plaintiff was not as qualified as Weldon was for the position to which Plaintiff sought a lateral transfer in 2015, and this might seem to undermine Plaintiff's ability to meet her *prima facie* burden. In point of fact, however, Sixth Circuit precedent is self-contradictory as to whether a plaintiff must show that she was similarly qualified to the comparator employee in order meet the *prima facie* standard. *Compare White*, 429 F.3d at 241-42 ("[I]t is insufficient for a plaintiff in a failure to promote sex discrimination case merely to point to a man who received the job in satisfying the fourth prong. . . . We hold that in order to satisfy the fourth prong of the prima facie burden in a failure to promote case, it is incumbent upon the plaintiff to establish that she and the non-protected person who ultimately was hired for the desired position had similar qualifications.") *with Vincent v. Brewer Co.*, 514 F.3d 489, 495 (6th Cir. 2007) ("This court has repeatedly stated that the fourth element [of the *prima facie* case] requires a plaintiff to show only that she was replaced by a person outside the

protected class. Nowhere does this oft repeated standard suggest that a plaintiff and her replacement must be similarly qualified.") (internal quotation marks and citations omitted).

Even so, assuming that Plaintiff has met the *prima facie* standard, she clearly fails at the pretext stage. As noted, MGM's proffered reason for the decision is that Weldon was offered the job because even though he had substantially less experience working in Engineering positions overall than Plaintiff had, he had several months of maintenance experience on the FACE Team at the hotel, and also because he was taking continuing education courses. Contemporaneous Interview Rating Sheets, completed by Lewis and Valentine for both Plaintiff and Weldon after interviewing them for the job, support this stated rationale for the decision. For example, in the narrative section of Plaintiff's Interview Rating Sheets, Valentine wrote "Has not done the job" and Lewis wrote "Not enough hotel experience or knowledge of procedures." (Def.'s Reply Ex. D, E-I Application Documents at Pg ID 381, 386.) By contrast, on Weldon's Interview Rating Sheets, Valentine wrote "Will work well as [illegible] one. Did well on the interview[,]" while Lewis wrote "Great interview. Great overall knowledge of job responsibility & guest service. Continuing his education with the union & university." (*Id.* at Pg ID 390, 396.)

As noted supra, Plaintiff can demonstrate pretext "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Grace v. USCAR and*

*BARTECH*, 521 F.3d 655, 670 (6th Cir. 2008) (citing *Wexler v. White's Fine Furniture*, 317 F.3d 564, 576 (6th Cir. 2003) quoting *Dews v. A.B. Dick*, 231 F.3d 1016, 1021 (6th Cir. 2003)). The contemporaneous evidence quoted above weighs against any argument that MGM's proffered reason has no basis in fact or did not actually motivate the decision, and Plaintiff has offered no evidence that counters this. Nor has Plaintiff demonstrated that the decision to hire Weldon rather than her into the position was necessarily unreasonable, let alone objectively insufficient, given the multiple plausible reasons that MGM has offered for the decision. And to whatever extent the disparity between the overall engineering experience possessed by Plaintiff and Weldon was notable, precedent requires courts to defer to the business judgment of employers in all but the most extreme circumstances. *See Covington v. MCI Worldcom Network Servs. Inc.*, 93 F. App'x 837, 840 (6th Cir. 2004) ("[A] trial court does not 'sit as a super-personnel department' in Title VII cases to second-guess the wisdom of an employer's standards.") (quoting *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004)).

In summary, insofar as Plaintiff's claim is based on MGM's decision not to award her a lateral transfer in 2015, that claim fails on exhaustion grounds under Title VII, and on the merits under both Title VII and ELCRA.

C.  2016 Application for E-II Position

Another basis for Plaintiff's discrimination claim on which MGM has moved for summary judgment is MGM's failure to hire Plaintiff into the "Engineer II – FACE

Team" position to which she applied in 2016. The position was awarded to Weldon instead. As discussed below, however, Plaintiff has not raised a genuine fact issue that would allow this basis for the claims survive summary judgment.

MGM argues on several fronts that its selection of Weldon over Plaintiff in 2016 for the "Engineer II – FACE Team" position cannot serve as a basis for a viable discrimination claim. First, MGM argues that Weldon was more qualified than Plaintiff for the position because he had experience working in the hotel guest rooms, he had experience repairing the specific systems used in those guest rooms, and he had obtained a degree and other educational certificates that qualified him for the job. MGM also points out that Plaintiff herself admitted in her deposition that she believed Weldon to be more qualified for the position than she had been. (Gibson Dep. 61:17-62:5.) Finally, MGM argues that Plaintiff was not qualified for the job herself, pointing out that she lacked experience working in the hotel, that she lacked experience repairing (or knowledge of) the systems in the hotel guest rooms, and that the only related education she possessed was a four-semester plumbing course in 2002-03.

Plaintiff raises several distinct arguments in support of her position. These arguments merit some detailed description, and are summarized in turn below.

First, Plaintiff contends that in the 17 years she spent as a Maintenance Trainee and then an Engineer I at MGM, she performed the same work as employees in both the Engineer II and the more senior Engineer III classifications. She testified to her belief that this was the case in her deposition:

Q. Okay. So you have the certification for plumbing, but if there was a mandated regulatory requirement for more qualified plumbing work such as something that would require a journeyman to perform, you understand you wouldn't be able to do that work, right?

A. I do journeyman work now, yes.

Q. You do it now?

A. Yes.

Q. Okay. What journeyman work do you do currently?

A. I do everything the Plumber 3s do. We have the same exact workload and work -- the actual work given. They plunge toilets. I plunge toilets. They do the pool checks. I do the pool checks. They re-pipe copper. I re-pipe copper. I do exactly what they do.

Q. Okay. But do you know if they do anything in addition to that?

A. They don't. We do the same work.

Q. Okay. They don't do any more involved plumbing work than that?

A. Not that I'm aware of. I'm with -- according to their work log, they do what I do. And when I'm working directly with the one, we're doing the same thing.

Q Okay. But you don't supervis[e] the E3s, right?

A. No.

Q. Okay. So you don't know what they're doing --

A. Yes.

Q. -- when you're not around?

A. On my shift, yes, because either the call comes on the radio or it's either the manager will call them to do something and I know what they're doing or it goes to their device, and we communicate all the time.

(Gibson Dep. 44:20-46:4.)

Second, Plaintiff argues that the sheer disparity between her experience and Weldon's experience renders the higher marks that Valentine and Lewis gave to Weldon less than fully credible, thus suggesting that the scores "were skewed in favor of Mr. Weldon and did not reflect the candidates' actual abilities." (Pl.'s Resp. at 8, Pg ID 233.)

Third, and most importantly, Plaintiff compares her qualifications against

Weldon's in light of the job requirements for Engineer II positions set forth in the Labor

Agreement:

> Minimum of 3-5 years building maintenance experience in the hospitality or service industry or 3-5 years building maintenance skills that are transferable to the hospitality or service industry.
>
> Trade related certification or license where mandated by trade regulatory requirements. Five (5) years of trade experience may be an acceptable alternative for license requirements.
>
> 2-5 years' experience in K&R.[5]
>
> CFC Type II or better qualification.
>
> HVAC 3rd Class Refrigeration license.
>
> Passage of electrical courses.

(Pl.'s Resp. at 8-9; Labor Agreement at 109, Pg ID 122.) Plaintiff asserts that Weldon did

not meet these job prerequisites at the time the promotion decision was made in 2016, but

that she did. And although Plaintiff does not frame this argument in terms of the four

elements of the *prima facie* case discussed above, the main thrust of Plaintiff's argument

is that she has satisfied the two prongs of that standard that are at issue in this case: i.e.,

that she was qualified for the position, and that the position was awarded to a similarly

---

[5] "K&R" is shorthand for "Kitchen and Refrigeration." (See Def.'s Mot. at 1, Pg ID 89; Gibson Dep. 18:7-12.)

situated male employee.[6]

"To establish that she is qualified for the position, a Title VII plaintiff need only show that she satisfied an employer's 'objective' qualifications." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009) (citing *Wexler*, 317 F.3d at 575–76). The plaintiff can meet this burden "by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Wexler*, 317 F.3d at 575-76. "Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id.* at 576.

Plaintiff's assertion that she was qualified for the "Engineer II – FACE Team"

_____

[6] Plaintiff's Response (p. 9) also makes an argument concerning a journeyman's license, but this argument confuses the issues and should be disregarded. The Engineer III position that was awarded to Davis required a journeyman's license, but not the Engineer II job that went to Weldon. The requirements for that job, and whether the applicants met them, are discussed below.

In the same argument, Plaintiff mentions that in the ten months between Weldon's promotion to Engineer I and his promotion to Engineer II, he was out for three months on personal leave while on trial for attempted murder, at which he was acquitted. She mentions this fact again in the Conclusion section of her Response, suggesting that "Mr. Weldon's people skills may not be as good as advertised when he shoots someone and spends three weeks on trial for seven charges including attempted murder," and then arguing that managers Lewis and Valentine "overlook that Mr. Weldon has one-tenth of the experience as Plaintiff, has shot someone and been accused of attempted murder and chooses him for two positions instead of Plaintiff keeping intact their streak of never promoting a woman." (Pl.'s Resp. at 24-25, Pg ID 249-50.)

MGM responds to this by asserting that Weldon's criminal charges arose from the fact that he "was forced to use a firearm to protect himself and a young woman he was with from assault after a holiday party in 2014 that resulted in an injury to one of his attackers," and that he was ultimately acquitted on all charges." (Def.'s Reply at 2-3 n.1.)

Plaintiff's mentioning Weldon's criminal prosecution is patently irrelevant to any claims or defenses in this case.

position, and therefore satisfies the second prong of the *prima facie* case, is belied by the record, as it contains evidence that Plaintiff did not meet prerequisites that were listed in MGM's internal job description for that position, and did not meet other prerequisites that the Labor Agreement lists as applicable to Engineer II positions generally. MGM's internal job description for that position includes, amid the required "Knowledge, Skills and Abilities," the items "Knowledge of mechanical, electrical and basic guest room equipment" and "Must possess previous experience repairing Bartech, Inncom and NXTV systems." (Def.'s Mot. Ex. H, E-II Description at Pg ID 158.) Plaintiff has offered no evidence that she had knowledge of or experience repairing guest-room electronic equipment as required by this job description, and in fact testified that she has never performed guest maintenance calls, that she was not familiar with the television systems in the hotel guest rooms, and that she had never been trained in guest-room etiquette or how to interact with hotel guests. (Gibson Dep. 50:22-51:7, 82:10-20.) In addition, as noted *supra*, the Labor Agreement provides that positions in the "Engineer II – Engineer" category, which included the position Plaintiff applied to in 2016, generally have certain technical prerequisites: "2-5 years' experience in K&R," "CFC Type II or better qualification," "HVAC 3rd Class Refrigeration license," and "Passage of electrical courses." (Labor Agreement at 109, Pg ID 122.) Plaintiff testified that she did not meet any of these four enumerated requirements.[7] (Gibson Dep. 43:19-44:15.)

_____

[7] The Labor Agreement contains two more requirements for "Engineer II – Engineer" positions: "Minimum of 3-5 years building maintenance experience in the hospitality or service industry or 3-5

By contrast, Valentine testified that Weldon had received training in maintenance of the guest-room technologies specified in the internal job description, and that this was in fact why Valentine had rated him at 4 in the "Related Education/Training" category on the Interview Rating Sheet, as compared with Plaintiff's 2. (Valentine Dep. 35:25-36:19.) As regards the guest-room technology experience component of the internal job description, at least, the record makes clear that Plaintiff was not similarly qualified to Weldon.

With respect to the four specific requirements in the Labor Agreement quoted above, however, Weldon also did not meet all of these requirements. Specifically, he testified that while he had passed electrical courses, he did not meet the other three specified qualifications at the time he interviewed for the job. (Weldon Dep. 20:15-21:5.) The law is somewhat unsettled as to whether a plaintiff who cannot show that she was qualified for the job or promotion may nevertheless establish her *prima facie* case if the employee who actually received the job or promotion was also not qualified under the employer's objective standards. Indeed, there is dicta in unpublished Sixth Circuit

---

years building maintenance skills that are transferable to the hospitality or service industry," and "Trade related certification or license where mandated by trade regulatory requirements. Five (5) years of trade experience may be an acceptable alternative for license requirements." (Labor Agreement at 109, Pg ID 122.)

The parties do not appear to dispute that Plaintiff met the first of these requirements. Whether she met the second requirement is less clear, but that requirement is important here for a different reason. The second sentence of that requirement states that five years of trade experience may satisfy it, but this experience-equivalency provision applies only to that specific requirement. In other words, Plaintiff has no basis for arguing that she satisfied the other prerequisites ("2-5 years' experience in K&R," "CFC Type II or better qualification," "HVAC 3rd Class Refrigeration license," and "Passage of electrical courses") by virtue of her experience alone.

decisions that goes in both directions. *Compare Ozier v. RTM Enterprises of Georgia, Inc.*, 229 F. App'x 371, 376 (6th Cir. 2007) (observing, where the Title VII plaintiff had "failed to establish his prima facie case for racial discrimination," that "[f]ailure to satisfy the second prong is dispositive of the issue" and that "we therefore do not need to determine . . . that [the plaintiff] also failed to satisfy the fourth element of the prima facie case because he could not show that he was replaced by a person outside of the protected class or was treated less favorably than a similarly situated individual outside of his protected class"), *with Reed v. Procter & Gamble Co.*, 556 F. App'x 421, 429 (6th Cir. 2014) ("We note that [the plaintiff] could establish a prima facie case of failure to promote notwithstanding his missing qualifications. In order to do so, he would have to put forth evidence demonstrating that employees outside of his protected class were promoted even though they, too, did not fulfill all the requirements. But he has not argued that this was the case.") (citation omitted).

The most analytically consistent approach to this issue is that which was employed in *Seay v. Tennessee Valley Auth.*, 339 F.3d 454 (6th Cir. 2003). There, the Sixth Circuit explained that a plaintiff's failure to meet the employer's articulated criteria for a position normally defeats the plaintiff's *prima facie* case, but if the employee who actually got the job *also* failed to meet that same criteria, this might raise a fact issue as to whether the criteria was actually used by the employer to determine who was qualified for the job. *See id.* at 465-66 ("[A]lthough posted minimum requirements often dictate which applicants are qualified and which are not, this does not always hold true. The Sixth Circuit noted,

that as the Supreme Court has repeatedly emphasized, 'the precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.' Thus, where a selectee does not appear to meet the posted qualifications, a genuine issue of material fact may exist as to whether the posted minimum requirements actually dictated the criteria the employer used in selecting applicants for the posted job.") (internal quotation marks and citations omitted) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) and collecting authorities).

It is at least conceivable—although far from conclusive—that a reasonable jury could find, based on Weldon's relatively minimal experience repairing guest-room technology and the fact that he did not possess most of the certifications specified in the Labor Agreement as required for Engineer II positions, that Plaintiff has raised sufficient issues of material fact to establish a *prima facie* case. Even if so, however, Plaintiff fails at the pretext stage. MGM's explanation for the decision to hire Weldon rather than Plaintiff in the "Engineer II – FACE Team" position is clear: Valentine and Lewis, and therefore MGM, believed him to be more qualified for the position than Plaintiff, chiefly based on his experience in the hotel. Both Valentine and Lewis specifically mentioned this experience in the Interview Rating Sheets that they completed after interviewing Weldon (*see* Pl.'s Resp. Ex. H, Weldon Interview Materials at Pg ID 290-91), and Plaintiff herself testified that because Weldon had been "a maintenance trainee and already had the training for certain things," she believed he was more qualified for the "Engineer II – FACE Team" position. (Gibson Dep. 61:1-62:5.)

As with the 2015 lateral transfer decision, Plaintiff has offered no evidence that

MGM's stated reason for selecting Weldon for the Engineer II position in 2016 has no

basis in fact or did not actually motivate the decision, and the contemporaneous evidence

discussed above is to the contrary. Nor has Plaintiff satisfied the third option for showing

pretext by demonstrating that the proffered justification was "insufficient to warrant the

challenged conduct." *Grace*, 521 F.3d at 670. The only argument she offers in this regard

is based on the fact that she had greater overall seniority than Weldon, and testimony

reflecting her subjective belief that as an Engineer I, she had "the same exact workload"

as employees in Engineer II and Engineer III positions. (Gibson Dep. 45:4-10.) But

Plaintiff has cited no authority or made any colorable argument suggesting that MGM's

basing the promotion decision on specific experience rather than general seniority is an

insufficient basis for that decision. And any subjective belief on Plaintiff's part that she

deserved the position because she did the same work as Engineer II and Engineer III

employees is both undermined by her testimony that Weldon was more qualified based on

his experience in the hotel, and insufficient as a matter of law in any case. *See Neff v. City

of E. Lansing*, 724 F. App'x 448, 452–53 (6th Cir. 2018) ("[A]ll that [the plaintiff] has

offered this Court is her own subjective belief that she was more qualified than others

who were promoted and that she was discriminated against based on her sex. That is

insufficient to show pretext and overcome a motion for summary judgment.") (footnote

omitted) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir. 1992) and

*Briggs v. Potter*, 463 F.3d 507, 516 (6th Cir. 2006)).

A reasonable juror could certainly disagree with MGM's decision to promote the less senior Weldon over Plaintiff, but this alone does not entitle Plaintiff to proceed on a Title VII claim. An employer's decision may be unfair, unwise, unreasonable, or even all three, but it is only actionable under Title VII's discrimination provisions if it was discriminatory. *See Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004) ("As we have oft times repeated, 'it is inappropriate for the judiciary to substitute its judgment for that of management.'") (quoting *Smith v. Leggett Wire Co.*, 220 F.3d 752, 763 (6th Cir. 2000)); *Covington*, 93 F. App'x at 840 ("[A] trial court does not 'sit as a super-personnel department' in Title VII cases to second-guess the wisdom of an employer's standards.") (quoting *Hedrick*, 355 F.3d at 462).

Since Plaintiff has raised no genuine issue of material fact as to the pretextual character of MGM's stated rationale for its decision to award the "Engineer II – FACE Team" position to Weldon, MGM is entitled to summary judgment on Plaintiff's Title VII and ELCRA claims insofar as they are based on that decision.

D.  2016 Application for E-III Position

The other factual basis for Plaintiff's Title VII and ELCRA discrimination claims that the parties argue in their briefs on MGM's Motion for Summary Judgment is MGM's decision to hire Joseph Davis instead of Plaintiff into the "Engineer III – Journeyman" position to which Plaintiff also applied in 2016.  The Court concludes that a discrimination claim on this basis also cannot survive summary judgment.

MGM argues that Plaintiff cannot make a *prima facie* case on this basis for her

discrimination claims because MGM's internal job description expressly required a journeyman's license for this position (*see* Def.'s Mot. Ex. G, E-III Description at Pg ID 155.), and because it is undisputed that Plaintiff did not possess such a license, while Davis did. (MGM also contends that any argument by Plaintiff that she was qualified through experience pursuant to the Labor Agreement is preempted, but as discussed in Section IV.A, *supra*, the Section 301 preemption doctrine very likely does not apply to Title VII claims, and so the Court does not grant summary judgment to MGM on this basis.)

Plaintiff offers several arguments in her Response. First, she argues that she met the journeyman's license requirement pursuant to the Labor Agreement, which includes among the qualifications for Engineer III positions: "Trade related certification or license where mandated by trade regulatory requirements. Eight (8) years of experience may be an acceptable alternative for the license requirement[.]" (Labor Agreement at 110, Pg ID 123.) Accordingly, Plaintiff contends, she was in fact qualified for the position. Second, Plaintiff argues that to whatever extent MGM claims that a journeyman's license was a strict requirement, this argument is undermined by the fact that in 2012, MGM hired a new employee into an Engineer III position who did not have a valid Michigan journeyman's license. Finally, Plaintiff argues that MGM's discriminatory motive is evidenced by "false fabricated statements" that Lewis and Valentine wrote on her Interview Rating Sheet in order to justify the promotion decisions. (Pl.'s Resp. at 13, Pg ID 238.) These include the statements by both Lewis and Valentine that Plaintiff did not

possess a journeyman's license, and the statement by Valentine that Plaintiff "said she [does] not know the hotel – but she should get the job – worked here 17 years." (Def.'s Mot. Ex. K, Gibson Interview Materials at 173, 177.)

In its Reply, MGM acknowledges that the Labor Agreement does provide for work experience as an alternative qualification to a journeyman's license, but argues that the Labor Agreement is clear that this is a discretionary decision on MGM's part, and points out that the internal job description simply mandates a journeyman's license as a requirement, which means that MGM elected not to allow experience to substitute for a journeyman's license for this specific position.

On each of these issues, MGM has the controlling position. To begin with, Plaintiff's arguments concerning "false statements" are devoid of merit. Whatever the validity of Plaintiff's claim that her work experience should have been treated as equivalent to a journeyman's license, the managers' notes in the Interview Rating Sheets that Plaintiff did not, in fact, possess such a license obviously do not constitute "false statements." Plaintiff does not dispute that she did not have a journeyman's license, and testified to that fact under oath. (Gibson Dep. 47:23-48:7.) As to Valentine's note that Plaintiff "said she does not know the hotel," Plaintiff claims that this was false because in fact she "did not say she did not know the hotel, she said she worked primarily in the Casino, but still worked in the hotel as well." (Pl.'s Resp. at 14-15, Pg ID 239-40.) In support of this assertion, Plaintiff cites the portion of her deposition in which she testified that she answered plumbing maintenance calls in the hotel "a few times." (Gibson Dep.

48:18-21.) This does nothing to establish what Plaintiff said in the interview, and thus does not establish that Valentine made any false statement. Plaintiff's testimony on her experience in the hotel was inconsistent, at any rate, as at a later point in the deposition, in response to a question as to whether she had customer-service experience in the hotel, Plaintiff testified: "Hotel customer service is the same as casino customer service, I would believe. Customer service is customer service. But I've never worked in the hotel, and neither has any of the other employees that got the job and the proper training." (Gibson Dep. 82:10-16.) Plainly, there is no colorable argument that "false statements" were made amid MGM's evaluation of Plaintiff's application.

The parties' other arguments primarily concern whether Plaintiff was qualified for the Engineer III position, which is the second essential element of her *prima facie* case. As noted *supra*, the Sixth Circuit has held that the requirements of a Title VII *prima facie* case can be context-specific, and that issues of fact may arise as to whether an employer's stated criteria for a position really constitute the relevant qualifications if the employer does not always adhere to them in making hiring decisions. *See Seay*, 339 F.3d at 465-66.

But Plaintiff's argument that MGM has hired applicants without journeyman's licenses for Engineer III positions in the past is not persuasive in this regard. Plaintiff offers only one example of such an applicant—William Walker, who MGM hired as an Engineer III in 2012—and argues that since Walker possessed a journeyman's license issued by the city of Phoenix, and since the state of Michigan does not recognize plumbing licenses from other jurisdictions, Walker did not possess a valid Michigan

journeyman's license when he applied to MGM and was therefore no different from Plaintiff, given that his application depended on experience rather than a valid journeyman's license. Plaintiff supports this argument with language drawn from the website of Michigan's Department of Licensing and Regulatory Affairs ("LARA"), which indicates that "[t]he state of Michigan does not reciprocate with any other state or country for plumbing licensing. As a result, you are required to pass an examination to receive a license to perform plumbing work in Michigan." (Pl.'s Resp. Ex. M, LARA Website at 2, Pg ID 309.) Assuming that this is an accurate statement of Michigan law as it applies to journeyman plumbers, these facts do not establish that MGM relaxes its journeyman's license requirement for Engineer III positions based on the applicant's experience, nor does it show that Walker's 2012 application was similarly situated to Plaintiff's 2016 application. At most, it suggests that the journeyman's license prerequisite for an Engineer III position is not necessarily limited to Michigan journeyman's licenses. Notably, the section of the LARA website cited by Plaintiff also states:

> A person who is licensed as a journey plumber in another state or country shall appear before a quorum of the state plumbing board to present evidence as to his or her possession of a journey license and the licensing requirements from the licensing state or country. The state plumbing board shall determine if the individual will be allowed to take the Michigan journey plumber examination.

(LARA Website at 2, Pg ID 309.)

Plaintiff's argument that Walker was similarly situated to her depends upon the assumption that possessing an out-of-state journeyman's license is equivalent to possessing no journeyman's license at all, and the language from the LARA website quoted above, which suggests that an out-of-state journeyman's license may serve in part to qualify an individual to take Michigan's "journey plumber examination," undermines this assumption. Moreover, the internal job description states only "Journeymen license required," and does not specify that the applicant can fulfill this prerequisite only by possessing a valid Michigan journeyman's license. This was also the case when Walker interviewed in 2012, as he testified that the job listing "didn't say any state, it said journeyman plumber card, which I did produce." (ECF No. 24, Deposition of William Walker at 13:16-20.) In short, Plaintiff offers no reason to conclude that MGM's failure to require all newly hired or promoted Engineer III employees to have Michigan journeyman's licenses means that MGM does not actually require them to possess journeyman's licenses at all. Thus, MGM's hiring of Walker at the Engineer III level does not create a genuine issue of material fact as to the consistency of MGM's licensing requirement for that position.

Significantly, the distinction that MGM draws between the Labor Agreement and the internal job description is critical with regard to the issue of whether Plaintiff was qualified for the "Engineer III – Journeyman" position. Plaintiff's argument is that since the Labor Agreement provides that work experience may be a valid substitute for an otherwise required license, she did in fact meet the qualifications for the position. Yet as

MGM aptly points out, what the Labor Agreement really does is give MGM discretion to permit such a substitution. This is based on two separate provisions of the Labor Agreement: (1) the work-equivalency provision itself, which is phrased in permissive rather than mandatory language ("Eight (8) years of experience *may* be an acceptable alternative for the license requirement" (Labor Agreement at 14, Pg ID 119 (emphasis added))); and (2) the provision elsewhere in the Labor Agreement that "[t]he qualifications required for a position will be determined by the Employer; such determination shall not be arbitrary or capricious." (*Id.* at 110, Pg ID 123.) The fact that the internal job description contains a journeyman's license requirement but no indication that work experience may substitute for it, then, indicates that MGM determined that for the "Engineer III – Journeyman" position, only an actual journeyman's license would met the requirement. (*See* Def.'s Mot. Ex. H, E-II Description.)

For these reasons, the Court finds that Plaintiff has failed to raise a genuine issue of material fact as regards the second prong of the *prima facie* standard. Even if the Court finds that Plaintiff *has* adequately made a *prima facie* case—for example, if the Court concludes that MGM's 2012 hiring of Walker undermines its assertion that a journeyman's license is actually required for Engineer III positions—then Plaintiff's claim based on the Engineer III position nevertheless fails at the pretext stage just as her claim based on the Engineer II position does. MGM's justification for hiring Davis instead of Plaintiff into the Engineer III position is that based on Davis's experience and licensure as well as Plaintiff's lack of a journeyman's license, the decision-makers

concluded that Davis was more qualified than Plaintiff for the job. The Interview Rating

Sheets that Lewis and Valentine completed for both Plaintiff and Davis support this

justification. (*Compare* Def.'s Mot. Ex. K, Gibson Interview Materials *with* Pl.'s Resp.

Ex. O, Davis Interview Materials.) And for the same reasons articulated in the discussion

of Plaintiff's claim regarding the Engineer II position that was awarded to Weldon, *supra*,

Plaintiff has offered no evidence on which a reasonable jury could find that this proffered

explanation was pretextual because it either "(1) has no basis in fact, (2) did not actually

motivate the defendant's challenged conduct, or (3) was insufficient to warrant the

challenged conduct." *Grace*, 521 F.3d at 670.

Accordingly, to the extent that Plaintiff's claims are based on MGM's staffing of

the Engineer III position in 2016, MGM is entitled to summary judgment on those claims

as well.

V.  *McDANIELS v. PLYMOUTH-CANTON COMMUNITY SCHOOLS (PCCS)*  \_\_\_ Fed.
App'x \_\_\_ 2018, 2018 WL 5734695, November 1, 2018 (6th Cir. 2018)

In *McDaniels*, the Plaintiff, a custodian at PCCS, applied three times to Plant

Engineer positions and was passed over each time in favor of a male candidate who had

closer relations with members of the hiring committee, and because they had been

observed to be more proficient in hands-on maintenance skills then *McDaniels*.  The

Sixth Circuit held:

> Although McDaniels establishes a *prima facie* case of
> discrimination, she cannot carry her burden of showing that
> PCCS' proferred reason for failing to hire her was pretext for
> gender discrimination.

P.1

In the instant case, Gibson did not have adequate hands-on experience with the range of maintenance required for the hotel positions she applied for. From 2002-03 until 2015, when Gibson first applied, she did not take any courses to provide her with expertise in the complete range of necessary non-plumbing FACE expertise required for a hotel-based position.

In the instant case, the successful candidates had demonstrated hands-on experience in all categories of hotel engineer requirements – not just plumbing experience.

The Sixth Circuit in *McDaniels* noted "that some of the hiring decisions were motivated by the stronger familiarity and personal relationships that members of the hiring committees had with the successful candidates than with *McDaniels*." The Sixth Circuit concluded that this reason can also be legitimate and may not amount to discrimination on the basis of gender. The Sixth Circuit elaborated:

> [O]ur law establishes that both reasons can be legitimate and may not discriminate on the basis of gender. Whether or not a candidate has demonstrated his or her ability regularly to perform the hands-on maintenance tasks that are required of a Plant Engineer may be a legitimate and highly rational reason for selection. Further, an employer may give greater weight to some qualifications than others and may look to qualifications that are not expressly articulated in the job description. See *Browning v. Dep't of the Army*, 436 F.3d 692, 696-97 (6th Cir. 2006).

*McDaniels* at 6. To the extent that Gibson has argued that she was discriminated against because other applicants were better known to the individuals responsible for promotion decisions, *McDaniels* notes that this can be a legitimate factor.

In *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987), the Sixth Circuit noted that "Title VII does not diminish lawful traditional management prerogatives in choosing among qualified candidates."

In *McDaniels*, the Plaintiff asserted that defendant had never hired a female Plant Engineer, but the Sixth Circuit none-the-less held, reluctantly, that her lack of hands-on experience undermined her claim of pretext:

> This is indeed troubling. However one or two female Plant Engineers had worked for PCCS, and another was hired after *McDaniels* departure."

*McDaniels*, P.7

This Court well-recognizes that an employer may not discriminate on the basis of gender. Plaintiff Gibson posits that Lewis and Valentine, the two MGM individuals that chose to not promote Plaintiff Gibson, had never been involved in promoting a female in the Engineering Department. This is incorrect!

Defendant MGM Grand, by a committee that included Jimmy Valentine, did promote Amy Winton, a female in the Engineering Department. Plaintiff's response to that fact was to file a *motion in limine* to exclude introduction into evidence of comparator female Engineer Amy Winton's promotion. Plaintiff asserted that Winton's promotion was really not that of a female because she was a lesbian. Plaintiff Gibson's

*motion in limine* stated that Winton was not a comparable because "Amy Winton as a homosexual female is not similarly situated as a straight married female. As a gay woman Ms. Winton does not share the same traditional stereotypes with Plaintiff as it pertains to romantic and sexual relationships." (ECF #34) P.5. The Court rejects this noxious argument by Plaintiff. This Court considers Ms. Winton a comparable female in the same Engineering Department.[*] This fact significantly undermines Plaintiff's claim of gender discrimination, and her further assertion that Defendant's articulated response is pretextual for unlawful gender discrimination.

## VI. CONCLUSION

Plaintiff Gibson is unable to show that a reasonable jury could find that Defendant's articulated motives in denying her promotions were a pretext for gender discrimination. Thus, her Title VII and ELCRA claims fail.

SO ORDERED.


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: January 25, 2019

---

[*]Defendant notes in its Supplemental Brief, 11-29-18 (ECF #44), Page ID 984, "Amy Winton was promoted from E-I to E-II, and ultimately E-III by Jimmy Valentine over male candidates. (ECF #39, Page ID 960-963; ECF #41, Page ID 967.